## PRUDEN v. LIEBLER.

( 135 N. W. 186.)

**Mortgage — guaranty of payment — what constitutes.**

1. Defendants agreed in writing to guarantee the payment of a certain mortgage debt upon the Langdon Opera House, executed by the Dakota Amusement Company, of which defendants were stockholders. The agreement in writing, relied upon by plaintiff, followed an extensive correspondence between plaintiff and defendants, showing that all of the details of the transaction were equally known to both parties. It was the understanding of everybody interested that the proceeds of the mortgage should be used to buy the opera house and other property. Plaintiff complied with the terms of the agreement, and the defendants were present at and participated in a meeting of the stockholders of the Amusement Company which ratified the details. *Held*, upon all the facts, that the contract was one of guaranty, and not an offer of guaranty.

**Guaranty — pleading in action on — negativing defense.**

2. The written contract of guaranty provided that the defendant should be released when the mortgage debt was paid, or when plaintiff sold the debt without personal liability upon his part. *Held*, that defendants must take advantage of a defense of payment or termination by a sale by plaintiff without recourse, by answer, and that plaintiff need not negative these defenses in his complaint.

---

Note.—As to what contracts amount to contracts of guaranty, see note in 105 Am. St. Rep. 503.

Guaranty — action on — estoppel to set up defense.

3. Appellants insist that plaintiff, having advanced only a small part of the consideration for the mortgage in cash, cannot recover for such amounts as are evidenced by the transfer of the opera house. *Held*, that defendants, having full knowledge of all the facts, are estopped to set up this defense.

Opinion filed February 13, 1912. Rehearing denied March 23, 1912.

Appeal from the District Court, Cavalier county; *Kneeshaw, J.* Affirmed.

*Joseph Cleary,* and *Johnson & Johnson,* for appellant.

*W. A. McIntyre,* for respondents.

BURKE, J. About the year 1904 the opera house hereinafter mentioned was being constructed at Langdon, North Dakota. The holders of some first liens had foreclosed, and the property was about to be sold upon the 12th of November of said year. The defendants in the case at bar were all junior lienors, and desirous to protect their interests. Upon said day, but prior to the sale, they entered into a written contract under which the St. Paul Roofing Cornice & Ornament Company was to buy in the property at the sale and hold the title as trustee for all of such junior lienors. It was agreed therein that said junior lienors should contribute towards the purchase in proportion to the amounts of their several debts, and that the property should be thereafter sold if possible, so to pay all of the claims against it. Under this agreement the property was bid in and held by the said ornament company until transferred to the Dakota Amusement Company, as hereinafter set forth. It did not seem possible to sell the property for enough to satisfy all claims, and an effort was made to float a loan upon the property, and for this purpose the Dakota Amusement Company was incorporated, the stock being held by the parties to the agreement of November 12, 1904, in proportion to their claims. This corporation was to take over the opera house and place thereon a loan, but as a matter of fact, for some time they did nothing whatever. No loan having been secured by May 15, 1906, upon that day, a letter was written by the attorneys for the ornament company to Mr. Finerty, one of the parties to the agreement, relative to some other matters regarding the opera house, wherein it is stated: "Now as to the loan, as you know

the ornament company is carrying this loan against its own line of credit, and it takes just so much money out of their business at this time of the year. There seems to be little prospect of your being able to effect a loan very soon, and Mr. A. K. Pruden, president of the ornament company, says that he believes he can negotiate this loan sooner or later, but if the mortgage was made to him with an insurance policy attached he could negotiate the same at a local bank here by guarantying it, and probably later, get someone to take it off of his hands, and this arrangement will take the matter out of the hands of the ornament company, and present indebtedness out of their line of credit at the bank, and in reality release to the corporation the amount they have advanced. If this is done Mr. Pruden will want the ornament company and other parties interested in the opera-house deal, to sign an agreement, agreeing to indemnify him against loss, by reason of the indorsement of the note, if such indorsement becomes necessary. . . . What he proposes is, that the ornament company deed the property to the Dakota Amusement Company and the Dakota Amusement Company make a mortgage upon the property for $10,000 due in five years at 8 per cent and insure for at least $10,000 (in fact the property should be insured for at least $15,000) the stockholders of the amusement company to agree to hold Mr. Pruden harmless by reason of such advances or indorsement of the note, should such indorsement become necessary to its negotiability. The ornament company can then transfer to the amusement company," etc.

In said letter was inclosed the proposed mortgage and notes for the consummation of the deal. To this letter Mr. Finerty replied May 19, 1906, returning to Mr. Pruden the notes and mortgage duly executed, and saying in part: "We return to you by this mail mortgages, coupons, and guaranty papers, all signed, and the deal is very satisfactory to us. Also the insurance papers. . . . Hope this is satisfactory to Mr. Pruden, and would ask that you would send the balance of the money, with statement to First Natl. Bank of Langdon." With this letter was the guaranty agreement mentioned, signed by all of the joint owners of the amusement company. This agreement reads as follows:

"Memorandum of agreement, entered into this 17th day of May, 1906, by and between A. K. Pruden of St. Paul, Minnesota, party of the first part, and the St. P. R. C. & O. Co., of St. Paul, Minnesota, M.

Liebler and Thomas Finerty copartners as Liebler (and others named) : Witnesseth, the parties of the second part agree to and with party of the first part, in consideration of the sum of one dollar in hand paid that. if the party of the first part will advance to the Dakota Amusement. Company the sum of $10,000, and take in his name a mortgage from said Dakota Amusement Company due in five years upon the property known as the Opera House at Langdon, North Dakota, the parties of the second part will guarantee payment of said mortgage and interest, according to its terms to the party of the first part, and hold said party of the first part harmless and free from loss by reason of the loan so made to said Dakota Amusement Company, and when said mortgage and interest is fully paid and discharged, or if the party of the first part shall be able to negotiate a sale of said mortgage without incurring any personal liability in so doing, then this agreement to cease and determine; otherwise to be in full force and effect. All liability under this agreement is to be borne by the parties of the second part, in the following proportions, to wit: Liebler & Finerty 10–15 of the total; Mahon & Robinson 1/15; Ornamental Co. 4/15. (Duly signed.)"

The members of the Dakota Amusement Company held a meeting of that company, and the following proceedings are shown by their minute book: "Present, Thomas Finerty, John Mahon, C. B. Smith, M. Liebler, E. P. Fan, by proxy I. E. Greenman. The following resolution was presented and adopted: 'Resolved, that the company acquire the property known as the Langdon Opera House . . . and that the president be authorized to negotiate its purchase and submit to the board a proposition for its acquirement.' This resolution was agreed to; all present voting, 'yes.' Mr. Smith then offered the following resolution: 'Resolved, that in the event the opera-house property in Langdon can be purchased at a reasonable figure, the president is hereby authorized to negotiate a loan upon the property, of $10,000, principally to be used in discharging the lien of the ornament company, and the balance to be used in improving the property. This resolution was adopted, all present voting, 'Yes.' "

At a similar meeting held June 25, 1906, the following proceedings are shown by the minute book: "Present, Thomas Finerty, John Mahon, E. H. Gordon, C. H. Smith, by proxy E. H. Gordon. President Finerty reported the purchase of the property known as the Langdon Op-

era House (describing it). . . . Moved by John Mahon, seconded
by E. H. Gordon, that the report of the president on the purchase of
the property be adopted and his acts ratified. Motion carried, all vot-
ing, 'Yes.' President Finerty reported the negotiation of a loan of
$10,000 on the opera house from ————, loan dated June 1, 1906, due
June 1, 1911, bearing 8 per cent payable semiannually."

Under the above arrangement, Mr. Pruden paid to the various lien
holders the amounts due to them, approximately $8,000 and had his or-
nament company deed the premises to the amusement company, free
from all encumbrances; paid something under $400 attorneys' fees in
connection with the deal, and paid to the amusement company some $1,-
600 in cash, thereby expending the $10,000 upon behalf of the amuse-
ment company. He did not negotiate the mortgage, but was obliged to
keep it; and nothing being paid thereon, he began foreclosure in Feb-
ruary, 1908, declaring the whole amount due and payable. At the sale
the property sold for $5,000, above the expenses of sale, and was bid in
by Mr. Pruden, who at the time of bringing this suit offered to trans-
fer the certificate to these defendants. This suit is brought by Mr.
Pruden under the guaranty agreement above set forth, and he asks for
judgment upon the same, for the proportionate sum due from each.
Liebler & Finerty and Mahon & Robinson answer, denying that Mr.
Pruden furnished the $10,000 as specified in the agreement, evidently
considering the payment of the debts of the old company as not amount-
ing to cash. The ornament company being controlled by Mr. Pruden, of
course made no defense. A trial was had in the district court, where
the above facts were shown without dispute and other correspondence
of a similar import was introduced in evidence. We have given only
a part of the correspondence in this opinion. At the close of the trial,
both sides moved the court for directed verdicts. The court allowed
the motion of the plaintiff. This appeal is from the judgment. Error
is assigned upon the refusal of the court to direct a verdict for the de-
fendants, and for directing a verdict for plaintiff. Other errors are
assigned, but are not supported in the brief, and are in fact without
merit.

(1) The defendants insist that the agreement made by them was
only an offer to guarantee, not binding until accepted. The rule appli-
cable is discussed in full in Standard Sewing Mach. Co. v. Church, 11

N. D. 420, 92 N. W. 805, where it is held that the test whether the instrument is a guaranty or merely an offer to guarantee, is whether there has been a mutual assent or meeting of minds necessary to the existence of a contract. Applying the above test to the case at bar, we see that the defendants, through their intimate knowledge of the workings of the amusement company, fully assented to everything that was done; knew practically everything that Mr. Pruden did; accepted the benefits of the contract almost as soon as it was made; and knew of the acceptance of the guaranty by Mr. Pruden when they executed the mortgage and received the money. Those facts make the contract one of guaranty, and not an offer of guaranty, as claimed by appellant. See Emerson Mfg. Co. v. Tvedt, 19 N. D. 8, 120 N. W. 1094; Davis Sewing Mach. Co. v. Richards, 115 U. S. 524, 29 L. ed. 480, 6 Sup. Ct. Rep. 173; Davis v. Wells, F. & Co. 104 U. S. 159, 26 L. ed. 686; 16 Enc. Pl. & Pr. 945; 20 Cyc. 1409.

(2) The appellants' further claim that there is in the complaint no allegation that the mortgage could not be sold by Mr. Pruden without personal liability to himself. A careful reading will disclose that the agreement is positive in its terms of original liability, and contains the provision that the said liability may be terminated by either payment or by a sale of the mortgage by Mr. Pruden without personal liability. Those two ways of release are upon equal terms, and it only requires a reminder that the plea of payment would be a matter of defense to be taken advantage of by answer, to show that the other means of terminating the liability must be pleaded likewise by answer.

(3) Defendants also insist that Mr. Pruden advances only $1,600 in cash, and that therefore the guaranty never became binding, or if binding at all, only to the amount of the cash advanced. We think the correspondence given above shows clearly an understanding, not only of the amusement company, but of those individual defendants themselves, that the money should be used in the way it was used. If not, how did the amusement company imagine they paid the $8,000 for the opera house? As those defendants were present at all of the meetings of the amusement company, and in fact were practically the amusement company, and as they were fully advised of every step taken, we do not think they are in a position to urge a strict construction of the agreement against the plaintiff. See 14 Am. & Eng. Enc. Law, 2d ed. 1143; 20 Cyc. 1424,

and cases cited. In Austin v. Wheeler, 16 Vt. 95, it is said: "Acts of parties having full knowledge of facts are decisive. Intent of parties is, in all contracts and especially commercial ones, the polestar of construction, and in ascertaining that intention courts always hold parties to their own construction of their obligations." In Phœnix Mfg. Co. v. Bogardus, 231 Ill. 528, 83 N. E. 284, it is held "a guarantor may, by inducing, approving, assenting to, or participating in any course of dealings, contrary to the letter of the contract, be estopped to set up such variation as a defense." Cyc. states the rule: "The guarantor may ratify any irregularity or change in the contract which he has guaranteed, and his assent to the change or modification will bind him without any new consideration." 20 Cyc. 1445, 1446. There might have been some room for doubt regarding the $400 paid by Pruden for attorneys' fees, but as the plaintiff has accepted a verdict less such amount, the defendants cannot complain.

Under all of the facts above given, we think the verdict was properly directed; and it is affirmed.